OSCAR JOHNSON v. THE STATE.

No. 4175.   Decided October 11, 1916.

**1.—Murder—Husband and Wife—Evidence—Competent Witness—Charge of Court.**

Where, upon trial of murder, the woman with whom defendant had been living in adultery, was introduced as a State's witness and the defendant objected, claiming that she was his wife, and was, therefore, incompetent to testify against him, but it appeared from the record that the trial judge was clearly authorized to find that said witness was not defendant's lawful wife at any time, and in addition, the court in a proper charge, submitted this question to the jury, instructing them to wholly disregard her testimony, if they had a reasonable doubt that she was defendant's wife, there was no reversible error.

**2.—Same—Rule Stated—Husband and Wife—Competency of Witness.**

If the uncontradicted testimony had shown that the witness was not defendant's wife, then it would have been a question for the judge alone to decide; however, as there was some testimony, tending to show that she was his wife, there was no error in the court's submitting the issue to the jury, as this was in the interest of the defendant.

Appeal from the District Court of Denton.   Tried below before the Hon. C. F. Spencer.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Boyd & Boyd* and *J. M. Davenport,* for appellant.—On question of competency of witness: Wafford v. State, 60 Texas Crim. Rep., 624; Berger v. Kirby, 105 Texas, 811; Bargna v. Bargna, 127 S. W. Rep., 1126; Frasier v. State, 84 id., 360; Batterton v. State, 107 id., 826.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder and his punishment assessed at thirty years confinement in the penitentiary.

The evidence clearly established that appellant begot a child of Ruby Summers, the thirteen-year-old daughter of the woman with whom he was living in adultery. The evidence suggests that some ten days or two weeks after this baby was born, he murdered the baby, and it clearly establishes that before the thirteen-year-old girl, Ruby, got up from her sickness of confinement appellant killed her by administering poison to her,—all, it seems, for the purpose of preventing prosecution for his acts upon the thirteen-year-old girl. How the jury could have assessed his punishment at only thirty years in the penitentiary is hard to understand. However, that was for the jury, and not this court.

The sole question in the case is, whether or not the court erred in permitting the said woman with whom appellant lived to testify against him, because he claimed that she was his wife. Of course, if she was his wife, she was incompetent to testify. If she was not his wife, she was competent to testify.

We will state the substance of some of the testimony on this point. This woman who claimed to be appellant's wife, her own sister testified, was named or called Bennie Tillie, Bennie Summers and Bennie Johnson. Her maiden name was Tillie. She at one time married a man by the name of Summers, by whom she had said thirteen-year-old girl. She testified that she was married to appellant in Kaufman in August, 1909. That appellant at the time sent her from where she was living, it seems in the edge of Dallas County, to Kaufman, for the purpose of marrying her, telling her he would get the license and a preacher. Later, that he appeared with a party, who he said was a preacher, and that that preacher read a license and married them. That she lived with him from that time on to the time of the killing of her daughter by him, though they were occasionally separated and had disturbances between them, but she claims there was no permanent abandonment at any time. No other testimony was introduced to show that these parties were married at that time, or any other time. She denied that she had told Mr. Farrington, the justice of the peace who made an investigation of the killing of her daughter soon after it occurred, that she was not married to the appellant. The justice of the peace swore that on his investigation of this killing he interrogated her and asked her whether she and defendant were then married, or ever married, and she then stated to him that they were not mar-

ried and never were married. That he asked her what she was doing with him and staying around with him so much for, and she replied that she was just cooking for him while he did the work. That he wrote this down at the time, and that she signed it and swore to it. It was agreed that no license was ever issued in Dallas County authorizing these parties to marry. The deputy clerk of Kaufman County swore that he had examined the marriage license records of Kaufman County from 1904 on down, and that he found no record of any marriage license issued to appellant and said Bennie Tillie, or Bennie Summers, to marry. That he did find a license to appellant, dated September 11, 1904, authorizing him to marry a woman by the name of Vercie Dickson; and that he found another license dated May 27, 1905, to appellant to marry a woman by the name of M. Sophie Sneed. It was also shown that appellant made a written application for a subpoena for said woman, naming her as Bennie Tillie, and not Bennie Johnson. One of his attorneys testified that he had written and had appellant to sign said application for a subpoena, and that he did so under the impression that they had some letters from Fort Worth to him which were signed "Bennie Tillie," and that he put it in *Johnson* at one place and *Tillie* at another. The deputy sheriff of Denton County swore that while the grand jury was investigating the charges against appellant he had him confined in the jail, and that appellant insisted upon the officer taking him before the grand jury; that he wanted to testify. That he submitted the question to some of the grand jurors, he thought, and at any rate to the county attorney, and that they told him if he wanted to testify, to bring him before the grand jury. The county attorney testified that when the appellant came before the grand jury he warned him as to his rights not to testify, told him what he was charged with and warned him that he did not have to make any statement, and that if he did make a statement it could be used against him. That thereupon appellant voluntarily testified, and that appellant said that he and Bennie Johnson weren't husband and wife. Mr. Kennedy, a witness for the defendant, testified that he had known him twelve or thirteen years, and that he had known him until some four or five years ago. That the witness was station agent for one of the railroads, and that appellant worked for him for a while. That while he worked for him, he was married twice. That he got a divorce and remarried. The clear inference from this witness' testimony is, that appellant was divorced from the first wife, whom he married in September, 1904, and later married the second wife, in May, 1905. There is no evidence and no reasonable inference from any of the testimony that appellant was ever divorced from the second woman he married in May, 1905, and there is an entire absence of testimony that that woman is not still living and his legal wife.

From the whole of this testimony, the judge was clearly authorized to believe and find that said witness, Bennie Tillie, Summers, or John-

son, whichever name she bore, was not appellant's lawful wife at any time, if it did not require him to so find.

When she was offered as a witness appellant objected to her testimony because she was his wife. The court after hearing said testimony overruled his objections, thereby clearly holding that in the judge's opinion she was not his wife, but was competent to testify.

In addition to this, the court, in a proper charge, submitted the question to the jury for a finding by them, and told them that if they believed, or had a reasonable doubt, that she was appellant's wife, to wholly disregard her testimony, and not to consider it for any purpose.

The court did not err in permitting this woman to testify and in overruling appellant's exception to her testifying on the ground as claimed by him that she was his wife, as shown by his first bill.

In his second bill, which is the only other in the record, he objected to the court's charge submitting the question to the jury of whether or not she was his wife, and if so, or they had a reasonable doubt of it, to wholly disregard her testimony, on the ground that this was a question for the judge himself to decide, and it was improper for him to submit it to the jury.

Some authorities hold that this is a question solely for the judge to determine and that he does not have to submit the question to the jury. 1 Wigmore on Ev., sec. 487. If the uncontradicted testimony had shown that said woman was not appellant's wife, then it would have been a question for the judge alone to decide, and it would have been wholly unnecessary for him to have submitted it to the jury. However, as there was some testimony tending to show that she was his wife, although the great preponderance showed that she was not, it was in appellant's interest, and not against him, when the court charged the jury as he did on this subject. So that, in both and each contingency, the action of the court was correct.

No other question is raised.

The judgment will be affirmed.

*Affirmed.*